# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

STEPHEN DANIEL NELSON,    :
   Plaintiff,       :
              :
v.             :   3:20cv778 (MPS)
              :
BRIAN PRELESKI, et al.,     :
   Defendants.      :

## INITIAL REVIEW ORDER

The plaintiff, Stephen Daniel Nelson, an inmate in the custody of the Connecticut

Department of Correction ("DOC") serving a sentence of fifty-five years of incarceration, filed

this civil rights complaint *pro se* under 42 U.S.C. § 1983 against Brian Preleski, States Attorney

for the Judicial District of New Britain Superior Court; James Rovella, Commissioner of the

Department of Emergency Services and Public Protection; Brandy Yanavich, Clerk Supervisor

of the Judicial District of New Britain Superior Court; and James Cetran, Chief of the

Wethersfield Police Department.[1] Compl., ECF No. 1.

Nelson sues all defendants in their official capacities and seeks: (1) a declaration that the

denial of DNA testing under the Connecticut General Statutes[2] violates his rights under the First,

---

[1] Nelson is not proceeding *in forma pauperis* as he has paid the filing fee.

[2] Nelson refers to Connecticut General Statutes § 52-582[(a)], which governs petitions for a new trial.
The court notes that postconviction petitions for DNA testing are governed by Connecticut General
Statutes § 54-102kk which provides, in relevant part:

 (a) Notwithstanding any other provision of law governing postconviction relief, any person who was
convicted of a crime and sentenced to incarceration may, at any time during the term of such
incarceration, file a petition with the sentencing court requesting the DNA testing of any evidence that is
in the possession or control of the Division of Criminal Justice, any law enforcement agency, any
laboratory or the Superior Court. The petitioner shall state under penalties of perjury that the requested

Fifth,[3] Eighth and Fourteenth Amendments to the United States Constitution against State's

Attorney Preleski (who opposed Nelson's requests for DNA testing) in his official capacity, and

(2) an injunction to compel defendants Rovella, Yanavich, and Cetran (who are alleged

custodians of the evidence) to release biological evidence to permit postconviction DNA testing

of evidence. *Id.* at ¶¶ 2, 6-9. Nelson asserts that relief under § 1983 is warranted when a state's

post-conviction DNA testing scheme is applied in a manner that violates constitutional principles

of fundamental fairness or due process. *Id.* He alleges that the defendants' refusal to release

evidence for DNA testing violates his constitutional rights because this denial has prevented him

from gaining access to evidence so that he may establish that he is actually innocent. *Id.* at pp. 9-

11.

      For the reasons that follow, the complaint must be dismissed.

## I.      STANDARD OF REVIEW

---

testing is related to the investigation or prosecution that resulted in the petitioner's conviction and that the evidence sought to be tested contains biological evidence.

(b) After notice to the prosecutorial official and a hearing, the court shall order DNA testing if it finds that:

      (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing;

      (2) The evidence is still in existence and is capable of being subjected to DNA testing;

      (3) The evidence, or a specific portion of the evidence identified by the petitioner, was never previously subjected to DNA testing, or the testing requested by the petitioner may resolve an issue that was never previously resolved by previous testing; and

      (4) The petition before the Superior Court was filed in order to demonstrate the petitioner's innocence and not to delay the administration of justice.

[3] Nelson has not invoked the Fifth Amendment in his specific claims for relief. The Fifth Amendment applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ambrose v. City of New York*, 623 F. Supp.2d 454, 466–67 (S.D.N.Y. 2009). Nelson has not alleged that a federal official violated his Fifth Amendment rights or explained any other ground for relief under the Fifth Amendment. The court construes his claim of Fifth Amendment violation as alleging a claim under the Fourteenth Amendment Due Process Clause as asserted in his first, second and sixth claims for relief. *Id.* at ¶¶ 26-29, 37.

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—to state plausible claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the plausibility standard. *See e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.     FACTUAL BACKGROUND

As this case stems from Nelson's state criminal convictions for the robbery, burglary kidnapping and assault of Lincoln Marshall, the court takes judicial notice of the following procedural history[4] underlying this matter as reflected in the Connecticut Supreme Court's

---

[4] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A description of the facts underlying Nelson's criminal case is contained in the Appellate Court's decision in *State v. Nelson*, 118 Conn. App. 831, 834-836 (2010).

decision affirming dismissal of Nelson's prior habeas petition,[5] in which he alleged ineffective

assistance of counsel at two criminal jury trials:[6]

> [Nelson] was charged with two counts each of kidnapping in the first degree, robbery in the first degree, and burglary in the first degree, and with one count each of conspiracy to commit robbery in the first degree, assault in the first degree, and larceny in the first degree after he and an accomplice allegedly broke into a Wethersfield home and proceeded to assault, rob and kidnap the occupant. Following a jury trial, [Nelson] was found guilty of conspiracy to commit robbery in the first degree and not guilty of larceny in the first degree. The jury was unable to reach a verdict on the remaining charges, however, and the trial court, *Vitale, J.*, declared a mistrial with respect to those charges. The court thereafter rendered judgment of conviction and sentenced [Nelson] to a term of imprisonment of eighteen years, and, on appeal, the Appellate Court affirmed the judgment of the trial court. See *State* v. *Nelson*, 105 Conn.App. 393, 418, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). [Nelson] then filed a timely application under General Statutes § 51–195⁴ with the sentence review division of the Superior Court, seeking a reduction of his sentence. The sentence review division, however, denied [Nelson]'s request and upheld his sentence. *See State* v. *Nelson*, Superior Court, judicial district of New Britain, Docket No. CR-05-220383-A, 2008 WL 2746485 (June 24, 2008).
>
> [Nelson] subsequently was retried on certain of the charges for which a mistrial had been declared in his first trial, and the jury found him guilty of the kidnapping, assault, and burglary charges. The trial court, *D'Addabbo, J.*, sentenced [Nelson] to fifty-five years incarceration, to run concurrently with the eighteen year sentence that had been imposed following [Nelson]'s first trial. On appeal, the Appellate Court reversed the trial court's judgment in part on double jeopardy grounds, remanding the case to the trial court with direction to merge [Nelson]'s two kidnapping convictions and to vacate the sentence imposed for the conviction of one of those counts. *See State* v. *Nelson*, 118 Conn.App. 831, 853–54, 862, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010). The Appellate Court affirmed the judgment in all other respects. *Id.*, at 833–34, 986 A.2d 311. [Nelson] failed to apply for sentence review within thirty days, as required by § 51–195.

*Nelson*, 326 Conn. at 775-776.

---

[5]   *See* http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV134005226S.

[6]   *See Nelson v. Commissioner of Correction*, 326 Conn. 772 (2017).

Nelson filed two separate habeas petitions (thereafter consolidated) alleging ineffective assistance of counsel at both of his underlying criminal trials. *Id.* at 777. In the consolidated case, the habeas court granted a motion for a stipulated judgment filed jointly by Nelson (who was represented by appointed counsel) and the respondent. *Id.* The stipulated judgment provided that the respondent agreed to the reinstatement of Nelson's right to file an application for a reduction of the fifty-five year term of imprisonment that Nelson had received following his second trial, that Nelson agreed to be foreclosed from filing any future civil actions challenging the judgments of conviction arising out of his first and second trials and, further, that the remaining counts of the then pending habeas petition were to be stricken with prejudice. *Id.*

The Sentence Review Division subsequently declined to modify Nelson's sentence. *Id.* at 778; *see State* v. *Nelson*, Superior Court, judicial district of New Britain, Docket No. CR–05–220383–A (November 2, 2012). Nelson later brought another habeas action, alleging various deficiencies in his underlying judgments of conviction. *Id.* The habeas court granted a motion to dismiss the habeas action on the basis of the stipulated judgment. *Id.* at 779. In affirming the habeas court's dismissal of Nelson's action, the Connecticut Supreme Court confirmed that habeas rights may be subject to waiver and noted that Nelson could have forestalled dismissal of habeas petition (on the basis of the stipulated judgment) if he had amended his habeas petition to allege ineffective assistance of counsel predicated on counsel's failure to properly advise him regarding his waiver of habeas rights under the stipulated judgment. *Id.* at 786-787.

<u>Nelson's Federal Complaint</u>

In this action, Nelson alleges detailed facts regarding the crime leading to conviction and the following facts relevant to his claim concerning biological evidence.  Detective Patkowski

of the Wethersfield Police Department was the lead investigator at the kidnapping, robbery, burglary and assault crime scene at Marshall's residence. ECF No. 1 at ¶ 19. He recovered tape wrapper, duct tape, zip ties, a knife sharpener, a knife, a black knit hat allegedly found on top of a highchair, and other items. *Id.* These items have never been subjected to DNA testing despite the possibility that they may contain DNA evidence from the perpetrators of the crime. *Id.*

During the trial, the State had represented that Marshall had seen Nelson wearing the black knit hat inside of the apartment and witnessed Nelson take off the hat and place it on the highchair.[7] *Id.* at 6. Nelson's attorney had argued in his closing statements that the knit hat found at the crime scene was sent to the forensic crime laboratory for analysis and the evidence did not definitively implicate Nelson in the crime. *Id.* at 25. However, a Freedom of Information Act request revealed that the black knit hat was never subjected to DNA analysis. *Id.* at 26.

Nelson "filed a motion for DNA testing under the existing Connecticut Law [a]pproximately seven months ago, but this request was ordered str[uck] after [] lengthy proceedings—including an amended plead[ing] with respect to additional Brady mater[i]al." *Id.* at 1.

Nelson's allegations do not elaborate upon his prior motion for postconviction DNA testing and the state court's order. *See* ECF No. 1 at ¶ 1. However, this court takes judicial notice of the state superior court docket in Nelson's Petition for a New Trial.[8]

---

[7] Nelson states that he attached trial transcripts. *Id.* at 6. However, no transcripts are attached.

[8] The case detail is publicly available at:
http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHBCV195025745S
The court also notes Nelson has a habeas action against the Commissioner of the Department of Correction filed on August 9, 2019 pending in Connecticut superior court, and a completed habeas action against a DOC warden filed in 2015. *See*

On June 6, 2019, Nelson filed a Petition for a New Trial under Connecticut General Statutes § 52-582(a), which requested the superior court "to release and/or render a DNA testing on the (biological evidence) black knit hat and/or vacate his conviction and issue a new trial." Petition at 1. In that Petition, Nelson alleged that the knit hat had not been tested for DNA but that his attorney's closing argument claimed it had been submitted for analysis and that nothing linked the hat to Nelson. Petition at 2. Nelson claimed his attorney should have had the hat tested for DNA evidence but failed to do so. *Id.* at 4. His Petition's five grounds for relief asserted essentially the same violations of his constitutional rights as presented in the instant federal civil rights complaint.[9] *Id.* at 4-6

In a Motion to Strike filed on September 26, 2019, the respondents argued that Nelson had not alleged any newly discovered evidence and had, therefore, not satisfied § 52-582(a)'s standard for a new trial by showing newly discovered evidence that would have reasonably likely changed the outcome at the trial had the evidence been presented. *See* Conn. Gen. Stats. § 52-582(a); Opposition at 3.

---

http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV195000266S; http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV154007626S. Nelson also filed a federal habeas petition under 28 U.S.C. § 2254, complaining of ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct stemming from the alleged lack of forensic evidence linking him to the crimes. Dkt. 3:12cv446 (SRU). In that action, the court granted the respondents' motion to dismiss the basis of nonexhaustion, although respondents had also argued that Nelson was collaterally estopped from asserting his action due to his agreement in the stipulated judgment. *See* ECF No. 9 at 8-10; ECF No. 25 (dismissing petition without prejudice). He also filed another federal habeas petition under § 2254 requesting DNA testing that was voluntarily withdrawn. Dkt. 3:18cv894 (VAB), ECF Nos. 1, 6.

[9] His state court petition does not include his claim that defendants denied him "his right to meaningful access to state and federal court" to establish his actual innocence in violation of the First and Fourteenth Amendments.

On October 28, 2019, Nelson filed a response, arguing that his counsel's improper closing arguments, and the prosecutor's failure to object thereto, placed the constitutionality of his conviction in question and DNA testing would enable him to show his innocence. Response, at 3-5. In an order dated January 15, 2020, the superior court granted respondents' Motion to Strike Nelson's Petition for a New Trial on the basis of his failure to state a legally sufficient cause of action.

### III.    DISCUSSION

Nelson's federal § 1983 complaint claims the refusal to release the biological evidence for DNA testing prevents him from having the opportunity to show his innocence. ECF No. 1 at ¶¶ 27, 29, 31, 33, 35, 36. He claims the defendants have deprived him of access to evidence for DNA testing in violation of: (1) his Fourteenth Amendment due process rights (counts one and two), (2) his Eighth Amendment right to be free from cruel and unusual punishment (count three), (3) his right to a fair executive clemency proceeding (count four), (4) his right to present evidence of his innocence under the Confrontation and Compulsory Process Clauses of the Sixth Amendment (count five), and (5) his right to access to the courts under the First Amendment (count six).

It is well established that "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement[ ]'" and must seek relief by filing a "federal habeas corpus ... or appropriate state relief instead" after exhausting available state remedies. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (internal parentheses omitted) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 489 (1973) and citing *Wolff v. McDonnell,* 418 U.S. 539, 554 (1974); *Heck v. Humphrey,* 512 U.S. 477, 481 (1994); *Edwards v. Balisok,* 520 U.S.

641, 648 (1997)). In *Preiser*, the Supreme Court noted that both section 1983 and 28 U.S.C. §

2254(a) cover claims alleging violations of constitutional rights, but "considerations of linguistic

specificity, history, and comity led the Court to find an implicit exception from § 1983's

otherwise broad scope for actions that lie 'within the core of habeas corpus'" *Wilkinson*, 544

U.S. at 78-79 ("Defining the scope of that exception, the Court concluded that a § 1983 action

will not lie when a state prisoner challenges "the fact or duration of his confinement[.]'")

(quoting and citing *Preiser,* 411 U.S. at 476, 487, 489, 490-1).

Nelson's complaint, however, does not fall within the scope of a habeas action because

he seeks release of biological evidence for DNA testing rather than release from confinement.

*See Skinner v. Switzer*, 562 U.S. 521, 534 (2011) ("Success in his suit for DNA testing would not

'necessarily imply' the invalidity of his conviction."). Although a convicted defendant has no

"freestanding" substantive due process right to obtain DNA testing, a prisoner may "have a

liberty interest in demonstrating his innocence with new evidence under state law" and the state's

procedures must afford adequate access to information to vindicate that state right to post-

conviction relief. *District Attorney's Office for Third Judicial Dist.* v. *Osborne,* 557 U.S. 52, 68-

69, 72 (2009). Thus, a plaintiff may challenge a state's procedures for post-conviction access to

evidence on due process grounds by showing the state procedures are "fundamentally inadequate

to vindicate the substantive rights provided." *Osborne*, 577 U.S. at 69 ("the question is whether

consideration of Osborne's claim within the framework of the State's procedures for

postconviction relief 'offends some principle of justice so rooted in the traditions and conscience

of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of

fundamental fairness in operation.'") (quoting *Medina v. California,* 505 U.S. 437, 446, 448

(1992)); *see also McLean v. Brown,* No. 08 Civ. 5200, 2010 WL 2609341, at *7 (E.D.N.Y. June 25, 2010) (citing *Osborne*, 557 U.S. at 69). "A prisoner's post-conviction due process right to evidence is limited" and "extends only to the proper application of a state-created right to such evidence." *Id.* at *7. Thus, the court must consider whether Nelson has a plausible liberty interest under state law and whether the state procedures are fundamentally inadequate to protect that interest in accordance with *Osborne*.[10] *See McKithen v. Brown*, 626 F.3d 143, 152 (2d Cir. 2010) (considering whether procedures for post-conviction DNA testing under New York law violated procedural due process "by not adequately protecting a prisoner's residual liberty interest in proving his innocence in state court.").

A.    **Due Process**

1.    **State Liberty Interest**

In Connecticut, a postconviction defendant may file a petition under Connecticut General Statutes § 54-102kk, which provides that "any person who was convicted of a crime and sentenced to incarceration may, at any time during the term of such incarceration, file a petition with the sentencing court requesting the DNA testing of any evidence that is in the possession or control of the Division of Criminal Justice, any law enforcement agency, any laboratory or the Superior Court." Conn. Gen. Stats. § 54-102kk(a).

Under § 54-102kk(b), the court "shall" order DNA testing if, after notice to the prosecutorial official and a hearing, it finds that: "(1) A reasonable probability exists that the

---

[10]   The court must analyze a claim of violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient. *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (*per curiam*).

petitioner would not have been prosecuted or convicted if exculpatory results had been obtained

through DNA testing; (2) The evidence is still in existence and is capable of being subjected to

DNA testing; (3) The evidence, or a specific portion of the evidence identified by the petitioner,

was never previously subjected to DNA testing, or the testing requested by the petitioner may

resolve an issue that was never previously resolved by previous testing; and (4) The petition

before the Superior Court was filed in order to demonstrate the petitioner's innocence and not to

delay the administration of justice. Conn. Gen. Stat. § 54-102kk(b).[11] *See State v. Dupigney*, 295

Conn. 50, 60-61, 64, 73 (2010) (defining ''reasonable probability'' as "a probability sufficient to

undermine confidence in the outcome" for purposes of § 54-102kk(b)(1) in accordance with

*Brady v. Maryland,* 373 U.S. 83 (1963) and *Strickland v. Washington,* 466 U.S. 668, 694

(1984)).[12]

The statute also provides that the costs of DNA testing shall be borne by the state or the

petitioner according to the court's order in the interests of justice, but DNA testing "shall not be

---

[11]  Under section 54-102kk(c), the court "may" order DNA testing if, after notice to the prosecutorial official and a hearing, it finds that: "(1) A reasonable probability exists that the requested testing will produce DNA results which would have altered the verdict or reduced the petitioner's sentence if the results had been available at the prior proceedings leading to the judgment of conviction; (2) The evidence is still in existence and is capable of being subjected to DNA testing; (3) The evidence, or a specific portion of the evidence identified by the petitioner, was never previously subjected to DNA testing, or the testing requested by the petitioner may resolve an issue that was never previously resolved by previous testing; and (4) The petition before the Superior Court was filed in order to demonstrate the petitioner's innocence and not to delay the administration of justice."

[12]  In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87. In *Strickland*, the Supreme Court held that a defendant asserting postconviction ineffective assistance of counsel must "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

denied because of the inability of the petitioner to pay the costs of such testing." Conn. Gen. Stat. § 54-102kk(d). Further, the statute affords the petitioner the right to be represented by counsel or appointed counsel for indigent petitioners. Conn. Gen. Stat. § 54-102kk(e).

As the Connecticut statute provides that the court "shall" order DNA testing if the conditions of § 54-102kk(b) are met, this court concludes for purposes of this initial review that Nelson retains a "state-created liberty interest in demonstrating his innocence" through access to postconviction DNA testing. *See McKithen*, 626 F.3d at 152.

### 2.      Adequacy of Procedures

Under *Osborne,* the court must apply a deferential standard to Connecticut's procedural rules for access to postconviction DNA testing. 557 U.S. at 69 ("Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided."). In accordance with the analysis articulated in *Osborne* and *McKithen*, this court concludes that the procedures of § 54-102kk are <u>not</u> "fundamentally inadequate to vindicate the substantive rights provided."[13] *Osborne*, 577 U.S. at 69.

As the Second Circuit explained in considering the procedures upheld in *Osborne*, a petitioner "seeking DNA testing in Alaska's courts" could receive relief "under the following conditions: (1) through the process of general discovery in support of a claim under Alaska's general post-conviction statute, provided that newly conducted DNA testing will provide clear and convincing evidence that [the petitioner] is innocent; or (2) pursuant to the Alaska courts' interpretation of the state constitution, provided that the petitioner's conviction relied on eyewitness testimony, there was a demonstrable doubt about the accuracy of that testimony, and

---

[13]  Research reveals no analogous procedural due process challenge to § 54-102kk.

scientific testing would likely be conclusive on this issue." *McKithen*, 626 F.3d at 153 (citing *Osborne*, 477 U.S. at 64-65) (internal quotations omitted); *see also Newton v. City of New York*, 779 F.3d 140, 149 (2d Cir. 2015) ("[T]he Alaska courts reinforced the statutory protection with a prophylactic measure that permitted defendants to access DNA evidence if they could demonstrate that (1) the conviction rested primarily on eyewitness identification evidence, (2) there was a demonstrable doubt concerning the identification of the defendant, and (3) scientific testing was likely to resolve the doubt[.]") (citing *Osborne*, 577 U.S. at 69–70) (internal citations omitted). *Osborne* held that Alaska's procedures for post-conviction DNA testing, "developed through the Alaska courts' interpretation of the state's constitution and post-conviction statute," were not fundamentally inadequate. *McKithen*, 626 F.3d at 153 (citing *Osborne*, 577 U.S. at 69). The Supreme Court held that the state's requirements for obtaining DNA testing (that the evidence be "newly available," "diligently pursued," and "sufficiently material" to the prisoner's guilt or innocence) were "not inconsistent with the traditions and conscience of our people or with any recognized principle of fundamental fairness." 577 U.S. at 70 (internal quotation omitted).

Moreover, the Supreme Court indicated that a plaintiff could not "sidestep state process through a new federal lawsuit" without actually seeking the DNA testing through the state procedures. *Id.* at 71. ("This is not to say that Osborne must exhaust state-law remedies….But it is Osborne's burden to demonstrate the inadequacy of the state-law procedures available to him in state postconviction relief. These procedures are adequate on their face, and without trying them, Osborne can hardly complain that they do not work in practice.").

13

In *McKithen,* the plaintiff, who had been convicted of serious crimes, brought a Fourteenth Amendment claim after his motion for postconviction DNA testing of evidence had been denied on the ground of "no reasonable probability that McKithen would have received a more favorable verdict had the forensic testing been performed and the results been admitted at trial." 626 F.3d at 146. The New York state statute at issue "requires only a showing that, had the DNA testing been performed at trial, 'there exists a reasonable probability that the verdict would have been more favorable to the [petitioner].'" *Id.* at 153 (citing N.Y.Crim. Proc. Law § 440.30(1–a)(a)). The Second Circuit determined that the New York procedures and "reasonable probability standard" were less stringent than the ones upheld in *Osborne* requiring "that DNA test results either 'clearly and convincingly' or 'conclusively' would establish [a prisoner's] innocence." *Id.* at 153-154. Thus, the Second Circuit concluded, "[b]arring proof of fundamental inadequacy," *Osborne* required it to defer to "New York legislature's judgment with respect to the appropriate procedure for post-conviction DNA testing." *Id.* at 154.

Here, Nelson asserts that Connecticut's post-conviction DNA testing scheme is applied in a manner that violates his rights and constitutional principles of fundamental fairness or due process. However, like the New York statute, the Connecticut statute, § 54-102kk(b), applies a "reasonable probability" standard. Moreover, under Connecticut law, this requirement is interpreted consistently with the relevant standard established by the United States Supreme Court. *See State v. Rosa*, 196 Conn. App. 490, 505, *cert. denied*, 335 Conn. 920 (2020) (noting *Dupigney* applied the *Brady* materiality standard to its determination of whether the petitioner had shown sufficient cause to obtain postconviction DNA testing). As the Connecticut Supreme Court explained, legislatures "face the dilemma of 'how to harness DNA's power to prove

14

innocence without unnecessarily overthrowing the established system of criminal justice[,]'" and "applying the *Brady/Strickland* meaning of reasonable probability to § 54–102kk (b)(1) serves these competing interests by requiring access to DNA testing only in those situations in which, if exculpatory results were discovered by DNA testing, these results would undermine confidence in the outcome of the trial." *Dupigney*, 295 Conn. at 66-67 (quoting *Osborne*, 577 U.S. at 62). Moreover, the Connecticut statute also ensures fundamental fairness by providing that a petitioner has the right to be represented by counsel or appointed counsel for indigent petitioners. Conn. Gen. Stat. § 54-102kk(e); *see Lassiter v. Dept. of Social Services,* 452 U.S. 18, 26-27 (1981) ("fundamental fairness" has meant that that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."). Thus, the court concludes Nelson's challenge to the Connecticut's postconviction DNA statutory scheme as fundamentally inadequate does not state a plausible § 1983 claim.

To the extent Nelson asserts a challenge to the procedures as applied to him, this claim must also be dismissed. Nelson's complaint indicates that he sought postconviction relief for DNA testing under a petition for a new trial pursuant to Connecticut General Statutes § 52-582(a); however, it fails to allege that he has sought relief under § 54-102kk, the specific Connecticut statute applicable to postconviction access to DNA testing.[14] *See Osborne*, 577 U.S.

---

[14] Moreover, courts have held that the *Rooker-Feldman* doctrine bars federal jurisdiction over as-applied challenges to state court decisions denying requests for DNA testing. *See McKithen v. Brown*, 626 F.3d at 154 ("McKithen's as-applied challenge meets each of *Rooker–Feldman*'s elements… [and] "by bringing an as-applied challenge, McKithen is asking the federal district court to review the validity of the state court judgment."); *Villafane v. Spota*, No. 165434 (JMA)(SIL), 2017 WL 650065, at *4 (E.D.N.Y. Feb. 16, 2017); *Gonzalez v. Vance*, No. 13 CIV. 498 AJN, 2014 WL 787853, at *5 (S.D.N.Y. Feb. 27, 2014); *Alvarez v. Attorney Gen. for Fla.,* 679 F.3d 1257, 1259, 1263 (11th Cir. 2012) (district court "correctly determined that as-applied challenge to state procedures for access to DNA testing was barred under *Rooker-Feldman* doctrine."); *see also Skinner*, 131 S.Ct. at 1298 ("a state-court decision is not reviewable

at 71. As there is "nothing inadequate about the procedures [Connecticut] has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence[,]" the court must dismiss Nelson's due process claim as not plausible. *Id.* at 69.

### B.   Other Constitutional Grounds

Nelson asserts that the court should afford him declaratory and/or injunctive relief on the basis of the Eighth Amendment, Sixth Amendment Confrontation and Compulsory Process Clauses, First Amendment right to access to the courts, and his right to a fair executive clemency proceeding. These additional grounds also lack merit.

### 1.   Eighth Amendment

Nelson claims that his lack of access to the biological evidence has caused him to suffer cruel and unusual punishment under the Eighth Amendment. Courts have declined to find an Eighth Amendment right to the release of evidence for DNA testing. *Wade v. Monroe Cty. Dist. Attorney*, No. 3:15-CV-00584, 2017 WL 4413195, at *9 (M.D. Pa. Sept. 29, 2017) ("defendants' refusal to release evidence or conduct DNA testing is not a 'punishment' proscribed by the Eighth Amendment"); *Williams v. McCulloch*, No. 4:15CV00070 RWS, 2015 WL 222170, at *3 (E.D. Mo. Jan. 14, 2015) ("state's refusal to conduct DNA testing is not punishment.").

In *McKithen*, the Second Circuit noted "'[t]he only way the Eighth Amendment is possibly implicated,' as a legal means for compelling the disclosure of evidence for post-

---

by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action"). The *Rooker-Feldman* doctrine applies "to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-284 (2005).

conviction DNA testing, 'is if it permits a freestanding claim of actual innocence.'" 626 F.3d at

155.   But "[t]he Supreme Court has left conspicuously unanswered the question whether the

Eighth Amendment provides such a freestanding claim," although it has noted the "'difficult

questions such a right would pose and the high standard any claimant would have to meet.'" *Id.*

(quoting *Osborne*, 129 S. Ct. at 2321).   Further, *Osborne* reasoned that recognizing a

substantive due process right for post-conviction access to DNA testing would "cast these

statutes into constitutional doubt" and "enlist the Federal Judiciary in creating a new

constitutional code of rules for handling DNA." *Osborne*, 577 U.S. at 74 ("To suddenly

constitutionalize this area would short-circuit what looks to be a prompt and considered

legislative response."). The Eleventh Circuit relied on this reasoning to reject an Eighth

Amendment claim based on access to DNA testing: "One of the main reasons underlying the

decision in *Osborne* is that it should be primarily up to the state and federal *legislatures* to

fashion procedures that balance the powerful exonerating potential of DNA evidence with the

need for maintaining the existing criminal justice framework and the finality of convictions and

sentences." *Alvarez v. Attorney Gen. for Fla.,* 679 F.3d 1257, 1265 (11th Cir. 2012) (citing

*Osborne*, 577 U.S. 62-63, 73). Accordingly, consonant with *Osborne*'s reasoning in declining to

recognize a substantive due process right, this court finds that Nelson has no right under the

Eighth Amendment to release of evidence for postconviction DNA testing.

### 2.      Sixth Amendment

Nelson's claim that denial of release the biological evidence for DNA testing violates the

Confrontation and Compulsory Process Clauses of the Sixth Amendment fails for similar

reasons. A criminal defendant has a constitutional right under the Sixth Amendment's

Compulsory Process and Confrontation Clauses and the Fourteenth Amendment's Due Process Clause to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (citation omitted). However, as *Osborne* observed, "a criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free [individual, ]" and [t]he state has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Osborne*, 577 U.S. at 69 (citations omitted). In accordance with *Osborne*, the court must defer to relief provided by the state's postconviction procedures so long as they are adequate. *Id.* As the court must defer to Connecticut's procedures for postconviction access to DNA testing that satisfy due process, the court concludes Nelson cannot assert a plausible right to release of evidence for DNA testing under the Sixth Amendment. *See Alvarez,* 679 F.3d at 1265.

### 3.     First Amendment Access to the Courts

Nelson maintains that refusal to release biological evidence for DNA testing also violates his right to meaningful access to the courts. An inmate has a right to access to the courts while incarcerated. *Christopher v. Harbury*, 536 U.S. 403, 415 (2005).[15] To state a claim for a denial of access to the Courts, a plaintiff must allege that "(1) he suffered an 'actual injury,' (2) to a non-frivolous legal claim, (3) concerning his criminal conviction, habeas corpus petition, or conditions of confinement." *Crosby v. Petermann*, No. 18-CV-9470 (JGK), 2020 WL 1434932, at *11 (S.D.N.Y. Mar. 24, 2020) (quoting *Kaminski v. Semple*, 796 Fed. App'x 36, 39 (2d Cir.

---

[15]   The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendment Due Process Clauses, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher*, 536 U.S. at 415 n.12.

2019)). The prisoner must allege that the officials who prevented his access did so deliberately or maliciously. *Jean-Laurent v. Lawrence*, 2013 WL 1129813, at *4 (S.D.N.Y. Mar. 19, 2013) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). "An action is 'frivolous' when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted). A legal theory is "indisputably meritless" when it "lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

Thus, to allege a denial of access to the courts claim, a plaintiff must allege the underlying arguable claim "well enough" for application of the "'nonfrivolous' test," and the allegations must show "that the 'arguable' nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 415-17. "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Bradshaw v. Burns*, No. 9:19CV0931 (BKS/DJS), 2020 WL 1129870, at *10 (N.D.N.Y. Mar. 9, 2020) (quoting *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999)).

Here, Nelson's complaint fails to satisfy this standard. He alleges that the defendants' conduct has prevented him from access to the courts to establish that he is actually innocent of the crimes for which he currently incarcerated. ECF No. 1 at ¶ 37. However, as the Supreme Court has observed, "success in [a plaintiff's] suit for DNA testing would not 'necessarily imply' the invalidity of [that plaintiff's] conviction. Test results might prove exculpatory, but that outcome is hardly inevitable, for those results could also prove inconclusive or incriminating." *Skinner*, 562 U.S. at 534. Thus, Nelson's claim to prove his innocence after DNA testing is not

more than a hope. Nelson has at most a hypothetical injury based on his belief that DNA testing could enable him to prove his innocence. As previously discussed, Connecticut has established adequate procedures for an incarcerated individual such as Nelson to seek access to DNA testing. Accordingly, the court must dismiss Nelson's denial of access to the court as not plausible.

### 4.      Right to Clemency Proceedings

Likewise, the court must dismiss as not plausible Nelson's claim that the denial of release of biological evidence for DNA testing has deprived him of his right to a fair executive clemency proceeding where he can make a showing of actual innocence. ECF No. 1 at ¶ 33. Both the Supreme Court (in *Osborne*) and the Second Circuit (in *McKithen*) have rejected such an assertion.   The Supreme Court observed that a noncapital prisoner has no constitutional right to executive clemency, and therefore, Osborne could not "challenge the constitutionality of any procedures available to vindicate an interest in state clemency." *Osborne*, 557 U.S. at 67–68 (citing *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464 (1981)). As the Second Circuit explained in *McKithen*, the Supreme Court held "that a prisoner has no liberty interest with respect to 'any procedures available to vindicate an interest in state clemency' because clemency is inherently discretionary and subject to the whim, or grace, of the decisionmaker; it is, in other words, a form of relief to which a prisoner has no right." 626 F.3d at 151 (citing *Osborne*, 577 U.S. at 67-68). Accordingly, this claim must be dismissed as not plausible.

### C.      Stipulated Judgment

Finally, the court also considers whether Nelson's complaint under 42 U.S.C. § 1983 is foreclosed by the stipulated judgment filed in his state prior habeas case. The Connecticut Supreme Court upheld dismissal of Nelson's habeas case subsequent to the entry of the

stipulated judgment because Nelson had made a valid waiver of his habeas rights. *Nelson*, 326

Conn. at 786.

> The stipulated judgment at issue provides, in relevant part:
>
> [T]he [respondent] agrees to stipulate to judgment to reinstate the [p]etitioner's right to
> file an application for sentence review as to the February 16, 2007 sentence rendered by
> the [c]ourt, *D'Addabbo, J.*, in [t]rial [two]. Such application must be filed within thirty ...
> days of the [o]rder entering this [s]tipulated [j]udgment. In exchange for the restoration
> of such rights, the [p]etitioner hereby agrees that he is foreclosed from further civil litigation
> challenging his convictions, which he places into issue in the cases consolidated under
> Docket No. CV–08–4002367, that all other counts contained in the [a]mended [p]etition
> shall be stricken with prejudice and that judgment shall enter in accordance with this
> stipulation.

*Nelson*, 326 Conn. at 777 n.7.

Accordingly, the court considers whether the instant federal complaint is foreclosed by

Nelson's waiver in this stipulated judgment. Under Connecticut law, "[a] judgment entered in

accordance with ... a stipulation of the parties is to be regarded and construed as a contract."

*Barnard v. Barnard,* 214 Conn. 99, 109 (1990). "A contract must be construed to effectuate the

intent of the parties, which is determined from the language used interpreted in the light of the

situation of the parties and the circumstances connected with the transaction." *See Murtha v.

Hartford,* 303 Conn. 1, 7–8, 35 (2011). "Where the language of the contract is clear and

unambiguous, the contract is to be given effect according to its terms[.]" *Barnard,* 214 Conn. at

110.

As the Connecticut Supreme Court noted, constitutional rights, habeas rights and

appellate rights may be waived if the waiver represents the intentional relinquishment of a

known right. *Nelson*, 326 Conn. at 786; *see also Statewide Grievance Committee v. Brown,* 67

Conn. App. 183, 188 (2001), *cert. denied*, 259 Conn. 919 (2002) ("Waiver consists of the

intentional abandonment or voluntary relinquishment of a known right."). In rejecting Nelson's assertion that the respondent was required to make an affirmative showing of his knowing and voluntary waiver of his future right to habeas relief, the Connecticut Supreme Court concluded "the nature of the decision of the prior habeas court in the present case was clearly set forth in the stipulated judgment and is not disputed: the parties agree that the prior judgment by its terms barred further habeas actions relating to the petitioner's two trials." *Nelson,* 326 Conn. at 785 (citing *Doe* v. *Roe*, 246 Conn. 652, 664–65 n.22 (1998) (stipulated judgment is "a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction ... [and] is binding to the same degree as a judgment obtained through litigation[.]")).

Under the express terms of the stipulated judgment, Nelson is "foreclosed from further civil litigation challenging" his convictions. Consistent with the Connecticut Supreme Court's determination that the stipulated judgment reflected Nelson's intentional relinquishment of a known right, this court concludes that the language of the stipulated judgment unambiguously reflects Nelson's intent to waive his rights to challenge his conviction through further "civil litigation. "

In the instant federal civil rights complaint, Nelson asserts claims of violations due to denial of his requests for DNA testing, and he asks this court to order to release biological evidence for DNA testing so that he may show his actual innocence on his convictions rendered in his state court trials in connection with the robbery, burglary kidnapping and assault of Marshall.[16] Thus, Nelson's federal § 1983 civil complaint seeks relief on grounds of alleged

---

[16] Of note, Nelson's first due process claim specifically invokes deprivation of access to exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1962). Because the remedy for a *Brady* violation is a vacatur of the judgment of conviction and a new trial, "*Brady*-based § 1983 claims

constitutional deprivations resulting from the denial of release of biological evidence for DNA testing, which is necessary for him to challenge his convictions. Accordingly, this action is encompassed by and subject to his agreement to be "foreclosed from further civil litigation, challenging his convictions[.]"

The court dismisses Nelson's claims on the additional ground that this action is precluded by his clear waiver in the stipulated judgment.

## IV.    CONCLUSION

For the foregoing reasons, Nelson's complaint is DISMISSED under 28 U.S.C. § 1915A.


_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 24th day of August 2020, at Hartford, Connecticut.

---

necessarily imply the invalidity of a challenged conviction." *Porventud v. City of New York*, 750 F.3d 121, 132-33 (2d Cir. 2014).

23